UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



------------------------------------------------------------------------X

BOARD OF EDUCATION OF THE UNIONDALE UNION
FREE SCHOOL DISTRICT,

                         Plaintiff,

        -against –

J.P. and S.R., individually, and as parents and legal guardians of
S.P., a minor,

                       Defendants.

------------------------------------------------------------------------X

Docket No. 18-CV-1038

ECF Case

# **COMPLAINT**

      Plaintiff BOARD OF EDUCATION OF THE UNIONDALE UNION FREE SCHOOL DISTRICT by and through its attorneys, Ingerman Smith, L.L.P., for its Complaint, hereby alleges as follows:

## **PRELIMINARY STATEMENT**

      1.    Plaintiff Board of Education ("BOE") of the Uniondale Union Free School District (the "District") brings this action pursuant to Section 1415(i)(2) of the Individuals with Disabilities Education Act, as amended (the "IDEA"), for an Order and Judgment, annulling and vacating the decision of the State Review Officer of the New York State Department of Education (the "SRO") in Appeal No. 17-094, dated November 29, 2017 (the "SRO Decision").

      2.    The SRO erred in reversing the Impartial Hearing Officer's ("IHO") denial of defendants J.P.'s and S.R.'s request for full tuition reimbursement of S.P.'s day program at the Vincent Smith School for the 2016-2017 school year.  The IHO, after presiding over an administrative hearing known as an "Impartial Hearing," correctly found S.P.'s parents not eligible for tuition reimbursement because the District offered S.P. a free appropriate public education ("FAPE") in the least restrictive environment ("LRE") through an individualized

education program ("IEP") developed at a February 24, 2016 IEP team meeting also known, in New York State, as a Committee on Special Education ("CSE") meeting.

3.     The SRO erred in dismissing the Plaintiff-District's cross-appeal challenging the Defendants' chosen placement, and in awarding Defendants tuition reimbursement, as the unilateral parent placement, a day program at an unapproved private school known as Vincent Smith School, is not appropriate under the IDEA and does not represent the LRE for S.P. Vincent Smith School is not specifically designed to meet the unique needs of S.P., a student with disabilities. The hearing record demonstrates that S.P.'s purported progress, and Vincent Smith School's chief benefits that allegedly enabled S.P. to make progress, are the kind of educational and environmental advantages and amenities that might be preferred by parents of any child, disabled or not.

4.     The SRO erred in dismissing the District's cross-appeal in deciding in favor of Defendants by deciding that the equities weigh in their favor, and erred in awarding Plaintiffs tuition reimbursement for Vincent Smith, because the evidence submitted in the record before the IHO demonstrates that the equities favor the Plaintiff, as Defendants predetermined the student's placement and failed to give the District an opportunity to address their concerns before placing the student at Vincent Smith.

5.     Lastly, the SRO's analysis, reasoning, and ultimate conclusion concerning S.P's reading deficiencies and S.P.'s needs being addressed by Academic Intervention Services ("AIS") as well as general education instruction, resource room, and related services, is inconsistent with guidance issued by the New York State Department of Education ("NYSED"), the governing agency that also supervises and controls the SRO. In particular, NYSED guidance sets forth that "specialized reading instruction" need not appear on an IEP and that such

instruction may be provided through various means.  Plaintiff District had presented testimony and evidence into the hearing record before the IHO that demonstrated that S.P.'s reading needs and weaknesses would be addressed through AIS, a general education service, for the subject-2016-2017 school year.  Despite not listing AIS general education reading services on S.P.'s IEP in prior years, the SRO did not dispute that S.P. had made progress with respect to reading in prior school years, including but not limited to the 2014-2015 and 2015-2016 school years.  The SRO therefore, conceding that the hearing record shows S.P. to have made progress, based his decision solely on Plaintiff's "failure to specify that the student would receive the AIS instruction in reading which she had received during prior school years."  The SRO concluded therefore that despite S.P. receiving substantive FAPE, that the Plaintiff District had committed a procedural error in failing to specify AIS reading instruction.  Despite the fact that SRO appears to reason that the Plaintiff has committed a procedural violation, the SRO ignores well-established doctrine that not every procedural violation in the development of an IEP renders the IEP inadequate under the IDEA.   A procedural violation is deemed to be a violation of substantive FAPE only where such a procedural violation: (1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a FAPE to the child; or (3) caused a deprivation of educational benefits.  Here, as the SRO had already concluded that S.P. had made progress in prior school years with AIS reading services, the SRO did not dispute that S.P. had received substantive FAPE, and that the District's alleged procedural violation, even assuming *arguendo* such alleged procedural violation occurred, did not impede S.P.'s right to FAPE; did not significantly impede the parents' opportunity to participate; or did not cause a deprivation of educational benefits.

6.      By virtue of the foregoing, and for the reasons discussed herein, the specific omission of AIS reading instruction did not result in an inappropriate IEP.   As the SRO's award of tuition reimbursement is based on his finding that S.P. was "denied a FAPE for its failure to address the student's reading needs during the 2016-2017 school year. . . ," it is respectfully requested that this Court annul and vacate the SRO's Decision in its entirety.

## JURISDICTION AND VENUE

7.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, 1343(a)(4) and 20 U.S.C. § 1415(i)(2), inasmuch as Plaintiff is "aggrieved by the findings and decision" issued by the SRO and, accordingly, Plaintiff has "the right to bring a civil action with respect to the complaint presented" herein and pursuant to the IDEA.

8.      This Court has pendent jurisdiction to adjudicate any state claims which arise out of the same facts as the federal claims asserted herein.

9.      Venue is properly laid in the United States District Court for the Eastern District of New York, as authorized by 28 U.S.C. § 1391, as the district wherein the Defendants reside and where the Plaintiff's principal place of business and operations is located.

## PARTIES

10.      Plaintiff BOE of the District was and still is the governing body of a municipal corporation duly organized and existing pursuant to the laws of the State of New York, and in particular, the Education Law of the State of New York, with offices for the transaction of business located at Uniondale, County of Nassau, and State of New York, New York 10533.

11.      Defendants J.P. and S.R. are the parents and guardians (the "Parents") of S.P. (the "Student"), a student with disabilities within the meaning of the IDEA and the Education Law of the State of New York, and were, at all times mentioned herein, and still are, residents of the

District at the time of the parents' Due Process Complaint and impartial hearing request of August 29, 2016 ("DPC").

## FACTS

12.     S.P., who was 12 years old, and turned 13 during the 2016-2017 school year, was and is classified under the IDEA and New York State Education Law, by the District's CSE as having a Speech or Language Impairment.

13.     Throughout her education, S.P. has struggled with processing verbal information and material, and has been slow to develop reading decoding and overall comprehension skills.

14.     Notwithstanding a relative weakness in processing verbal material, reading comprehension, and decoding, S.P. has made meaningful progress in the years preceding the 2016-2017 school, including but not limited to the 2014-2015 and 2015-2016 school years, when she attended school in a mainstream setting at the District's Walnut Street Elementary School.

15.     The 2015-2016 school year was S.P.'s fifth grade year at the District's Walnut Street Elementary School.

16.     For the 2016-2017 school year, S.P.'s sixth grade year, S.P. would have changed buildings and would have attended Turtle Hook Middle School had she not been unilaterally placed by her parents at Vincent Smith School, a private school located in Port Washington that has not been approved by the New York State Department of Education as a school with which public schools may contract with for the provision of special education services.

17.     During S.P.'s fifth grade year, and specifically in November of 2015, S.P. was reading at an independent level of "I" on the Fountas & Pinnell ("F&P") scale (a reading assessment tool used by the District and by many public school districts in New York State), and by the end of the school year, in or about June of 2016, was at an independent level "L."

5

18.    S.P. had progressed three letter levels in the F&P reading scale and had made meaningful progress commensurate with her abilities.

19.    S.P. had passed the New York State assessment bench mark with a 65 in English Language Arts and reading, thereby overcoming documented weaknesses in reading and language and despite testing with a Verbal IQ of 64, showing her to be in the 1st Percentile.

20.    S.P. also achieved a 92 out of 100 on her mainstream Math final indicating that she was above average compared to most of the nondisabled peers in her class in Math.

21.    S.P. had received meaningful educational benefit during her fifth grade 2015-2016 school year, when she was being educated in a mainstream classroom with special education support through daily Resource Room, and Academic Intervention Services ("AIS") in math and reading.

22.    S.P.'s report card for her 2015-2016 school year shows that she made progress in all of her subjects by the end of the school year, being educated in a program that the CSE ultimately determined at an annual review CSE meeting that took place on February 24, 2016, should be continued for the 2016-2017 school year.

23.    S.P. had made progress during the 2015-2016 school year despite having Attention Deficit Hyperactivity Disorder ("ADHD"), deficiencies in working memory, problems with syntax and grammar, and a weakness in processing and retaining information generally.

24.    During the 2015-2016 school year, S.P. received special education related services in the form of Speech-Language services three (3) times per week in a 5:1 group setting though most of the time, S.P.'s group Speech-Language services class had four (4) students, including S.P. herself.

25.     S.P. made meaningful progress from the beginning of the 2015-2016 school year to the end of the 2015-2016 school year in her speech and language deficiencies.  S.P.'s progress with respect to speech language was enough for the CSE to consider reducing S.P.'s three (3) times per week Speech-Language services to twice (2) per week, given the increased academic demands that the CSE anticipated, with S.P. moving up to the Middle School for the 2016-2017 school year.

26.     S.P. had also been progressing meaningfully during her fifth grade year, by receiving Resource Room special education services.

27.     Resource Room is a program which affords students in need of special education and especially students who have attentional issues and deficiencies and delays in verbal processing, additional and supplemental educational services, including but not limited to re-teaching, pre-teaching, and assistance with specific deficiencies, in a class setting of no more than five students where the students get a chance to develop reading skills, study skills, math, and generally have an opportunity to work on their IEP goals.

28.     S.P. attended Resource Room daily during the 2015-2016 school year, where she was one of four total students in the class.

29.     The other three students in S.P.'s Resource Room class had similar needs, which included reading difficulties, like S.P.

30.     At the Annual Review CSE Meeting of February 24, 2016, the members of the CSE presented testing results, evaluations, narratives, and progress reports in order to allow the CSE to determine S.P.'s then-present levels and abilities.

31.     S.P. progress report showed that during the 2015-2016 school year, as of May 2016, S.P. was "Progressing Gradually" or "Progressing Satisfactorily" on all of her Annual Goals.

32.     In addition to Special Education Services specifically listed on the IEPs that document S.P.'s 2015-2016 school year, S.P. was also receiving AIS in ELA (reading), and Math, and was anticipated to continue receiving building-level AIS services in both subjects, as S.P. had made progress receiving AIS in both ELA and Math.

33.     In particular, the District submitted evidence through testimony and documents showing prior practice and policy, that S.P. would continue to receive AIS reading during the 2016-2017 school year.

34.     The record of the Impartial Hearing establishes that AIS reading services, which targeted her deficiencies and needs in the area of reading, were available at the Turtle Hook Middle School for S.P.'s 2016-2017 sixth grade year, and that such services utilized various methodologies such as the Wilson reading program, that the Defendants claim S.P. now receives at Vincent Smith School.

35.     The record of the Impartial Hearing establishes that the Turtle Hook Middle School provides AIS reading classes in a 7 students to 1 teacher class ratio format.

36.     The record of the Impartial Hearing establishes that though AIS reading is a building-level general education service, and not a special education service, that AIS reading teachers and special education services providers coordinate and collaborate so that students who receive both are able to make progress in all academic areas, including reading.

37.     Although the Defendants do not *per se* claim that the annual goals were inadequate – Defendants have throughout the administrative proceedings accused the District of

8

"lowering the bar" but do not otherwise specify which goals were inappropriate - the record in this matter demonstrates that for both the 2015-2016 and 2016-2017 IEPs, goals were developed in line with S.P.'s deficiencies and needs.

38.    S.P.'s parents have raised generalized claims regarding the District's conduct in prior school years, including some generalized tangential claims involving the CSE not considering issues raised by the Parents' Pediatric Psychiatrist Dr. Alyson Gutman which were first brought to the attention of the CSE back in October 21, 2013.

39.    Defendants have failed to establish that Dr. Gutman's recommendations were not considered; in fact, the record shows that a CSE meeting was promptly and immediately convened as soon as the CSE received Dr. Gutman's October 21, 2013 letter during the 2013-2014 school year.

40.    The record of the Impartial Hearing fails to demonstrate that Dr. Gutman brought her own letters subsequent to the one written on October 21, 2013, to the CSE's attention as Dr. Gutman herself denied that she sent letters to the District directly.

41.    The Defendants have specifically accused the District of not considering Dr. Gutman's letters at the February 24, 2016 CSE meeting even though the Defendants are unsure whether they specifically asked the CSE to consider Dr. Gutman's letters.

42.    The record of the Impartial Hearing is devoid of any evidence that the parents of S.P. had raised Dr. Gutman's recommendations made in the letter dated October 21, 2013 that was more than two-and-a-half years old at the time of the Annual Review CSE meeting of February 24, 2016 to discuss the 2016-2017 school year.

43.     The record of the Impartial Hearing is devoid of any evidence that the parents of S.P. had wanted to discuss those recommendations again during the February 24, 2016 CSE meeting.

44.     Dr. Gutman was not a participant during the development of the 2016-2017 IEP and there is no support in the record that the CSE did not consider Dr. Gutman's recommendations other than that the CSE disagreed with her recommendations regardless of the lack of evidence that the Parents had even asked the CSE to discuss Dr. Gutman's recommendations.

45.     As it pertains to S.P. social and behavioral needs, in order to justify their unilateral placement in what the DPC characterizes as "a small therapeutic special education class," the Defendants appear to have embellished on S.P. social and behavioral needs to appear more significant than the student that the CSE developed an IEP for in February of 2016, for the 2016-2017 school year.

46.     The reports of Karen Bottalico and Dr. Annmarie Lepore, neither of whom testified at the Impartial Hearing even though both were initially identified as witnesses, paint a contrasting, somewhat misleading, picture of S.P. appearing both disruptive, emotionally immature, and in need of behavioral interventions and parent support services, as if S.P. were on the Autism Spectrum.

47.     The failure to recommend counseling, parent training/counseling, and behavioral intervention services, in the February 2016 IEP, does not constitute a failure to offer the Student a FAPE for the 2016-17 school year because there was no evidence that anyone, including the Parents themselves, had any concerns at the February 2016 CSE meeting that S.P. needed

behavioral supports, needed social or emotional counseling or services, or that the Parents needed parent training/counseling services.

48.    Notwithstanding the Defendants' attempts to show reports describing S.P. as behavioral and developmentally delayed, it is clear from the record of the Impartial Hearing that S.P. is not a child with Autism Spectrum Disorder;

49.    S.P. is a child who does not have behavioral needs or developmental needs that necessitate having the Parents receive training in performing intervention activities in the home; or whose needs are such that behavioral intervention support would have been required for the 2016-2017 IEP.

50.    The Defendants' claims regarding lack of behavioral support services  - that lack of parent training, or the accusation that a Functional Behavioral Assessment and/or a Behavior Intervention Plan should have been recommended and developed on the 2016-2017 IEP - has no merit and does not constitute a denial of FAPE.

51.    There is no evidence that S.P.'s behavior interfered with her own or another's ability to learn.

52.    The hearing record in this matter's Impartial Hearing contains sufficient evidence upon which to conclude that the failure to recommend parent counseling and training in the February 24, 2016 IEP did not amount to a failure to offer the student a FAPE for the 2016–17 school year.

53.    The record of the Impartial Hearing demonstrates that S.P. has good pragmatic speech skills, that she always greeted staff and students, maintained appropriate eye contact, initiated conversation and engaged in appropriate turn-taking in conversation and was able to stay on-topic when engaged in conversation.

11

54. S.P. did not have articulation issues with her speech (that could necessitate individual speech services) and denied behavioral and socialization difficulties that could have necessitated a recommendation of speech services on an individual one-on-one basis. The Defendants' claim that S.P. required individual speech services in order to be offered FAPE for the 2016-2017 has no merit.

55. The record of the Impartial Hearing demonstrates that the District fulfilled its obligation under the IDEA and Federal and State regulations in deciding to continue classifying S.P. as a student with a speech or language impairment as this classification did not compromise S.P.'s "right to an appropriate education, significantly impede the parents' opportunity to participate in the development of the IEP, or cause a deprivation of educational benefits."

56. The record of the Impartial Hearing does not support the Parents' claim that the District improperly classified S.P. with a Speech or Language Impairment as opposed to using the Learning Disability classification, as S.P.'s highest area of need involved, and still involves, the processing and comprehension of language.

57. It is undisputed that S.P. has language processing difficulties that interfere with her ability to follow directions and comprehend text, and that, for example, "[s]he does best when information is repeated and broken down into smaller, simpler segments."

58. Even S.P.'s classroom teacher and Speech-Language Pathologist at Vincent Smith School agree that "[S.P.] has a language impairment . . . that affects or impacts her educational abilities."

59. S.P.'s mother agreed that S.P. had both language and verbal issues.

60.    The record of the Impartial Hearing establishes that the District has proven that the District had sufficient evaluative material during the February 24, 2016 CSE meeting to make an appropriate program recommendation.

61.    The record of the Impartial Hearing demonstrates that the District's CSE's recommended program of resource room and speech services did not constitute a denial of a FAPE, even though S.P. continues to have reading deficits.

62.    The record of the Impartial Hearing establishes that during the 2015-2016 school year, with a program very similar to the program recommended for the 2016-2017 school year, the Student made progress.

63.    The IHO correctly determined that the February 24, 2016 IEP would enable S.P. to continue to progress in her 6th grade year.

64.    The IHO correctly determined that the 2016-2017 IEP contained academic and speech goals that addressed S.P.'s areas of deficit.

65.    The IHO correctly determined that it was not a denial of FAPE to reduce the Student's speech services by one session due to the academic demands of middle school, which led to a recommendation by the CSE that it would be prudent for the S.P. to have less pull-out services, like speech services, and remain in the classroom and receive academic instruction, where she could also receive vocabulary and grammar support.

66.    The IHO correctly decided that the Parents were not denied the opportunity to fully participate during the entire IEP development process.

67.    The record of the Impartial Hearing contains sufficient evidence that the Parents' concerns were not ignored during the February 2016 meeting, and that the Parents meaningfully participated in the CSE discussion and provided input.

13

68.     The record of the Impartial Hearing establishes that the CSE did not predetermine S.P.'s program.

69.     The record of the Impartial Hearing demonstrates that based on the information before the IEP team at the February 24, 2016 CSE meeting, counseling services were not warranted for S.P. even though the Defendants argue that the failure to recommend counseling constituted a denial of a FAPE.

70.     The hearing record demonstrates that S.P.'s placement in a general education class with daily resource room and Speech Language services twice a week mandated in the S.P.'s IEP was appropriate to address the Student's academic and speech deficits and complied with the Least Restrictive Environment requirements.

71.     The IHO correctly found there to be no evidence in the record that indicates that Turtle Hook Middle School could not implement S.P.'s IEP.

72.     The SRO and the IHO erred in concluding that the parents' choice of placement, Vincent Smith School, made unilaterally, was "proper under the [IDEA]."

73.     The Defendants have failed to demonstrate that Vincent Smith School provides educational instruction specifically and specially designed to meet S.P.'s unique needs as the Vincent Smith School does not provide any instruction or services specifically or specially designed to meet S.P.'s needs.

74.     The Defendants' arguments cite only to the Vincent Smith School's chief benefits which are of the kind of educational and environmental advantages and amenities that might be preferred by all children, disabled or not.

75.     The SRO and the IHO erred in finding that the parents acted reasonably, and cooperated with the District.  In fact, the record of the Impartial Hearing establishes that the

Parents had decided well before notifying the District of their intentions, and without affording the District's CSE an opportunity to reconsider the Parents' concerns, that they were placing S.P. at Vincent Smith.

76.     The SRO and the IHO erred in finding that equitable considerations weigh in favor of an award of reimbursement to the Parents for the costs of the Student's tuition at Vincent Smith School for the 2016-2017 school year.

## PROCEDURAL HISTORY

77.     The Parents of S.P., J.P. and S.R., commenced an Impartial Hearing, in accordance with the IDEA, New York State Education Law, and the pertinent regulations promulgated thereunder, on or about August 30, 2016, when the DPC dated August 29, 2016, requesting an Impartial Hearing, was faxed to the District.

78.     The DPC claims that the District failed to offer S.P., a 12-year old sixth (6th) grade student, an appropriate education for her 2017-2018 sixth (6th) grade school year.

79.     The relief requested in the DPC included, among other things, reimbursement for all tuition, fees and other expenses paid to Vincent Smith where the parents had unilaterally placed S.P. in September of 2016, and where she has since, during the administrative proceedings that are now the subject of the instant action, completed her sixth (6th) grade 2016-2017 school year.

80.     On September 6, 2016, Susan M. Barbour was appointed by Plaintiff BOE of the District as the IHO to conduct a hearing pursuant to the IDEA, and in accordance with the requirements and rotational selection procedures set forth in the New York State Education Law and Part 200 of the Regulations of the Commissioner of Education of the State of New York (the "Impartial Hearing").

81.     The IHO presided over the Impartial Hearing which took place on the following days: December 13, 2016, December 20, 2016, February 6, 2017, February 28, 2017, March 3, 2017, April 26, 2017, April 28, 2017, June, 2, 2017, June 9, 2017 and June 19, 2017.

82.     The Defendants were represented at the Impartial Hearing by Christina Thivierge, Esq. of Thivierge & Rothberg, P.C.

83.     The Plaintiff was represented by the undersigned, David Kwee, Esq., of Ingerman Smith, L.L.P.

84.     Following testimony from the following witnesses: Andy Emmanuel Blain, School Psychologist; Donna L. Smith, Speech Pathologist; Florence Lenda, Special Education Teacher; Doreen SanFilippo, AIS Teacher; Matthew Buttafuoco, Teacher; Conniee Quick-Lovell, ELA Teacher; John Baldi, Head of School of the Vincent Smith School; Lois Dierlam, Dean of Students of the Vincent Smith School; Justine Mulvihill, Reading Teacher; Josephine Erbacher, Teacher; Melody Pelisi, Social Worker; Susan Steinberg, Speech Pathologist; Dr. Alyson Gutman, Pediatrician (via telephone); and S.R., Mother, and after both the Defendants and Plaintiff were afforded an opportunity to submit closing briefs, the IHO issued a decision on September 18, 2017.

85.     The IHO, in her Findings of Fact and Decision of September 18, 2017 (the "IHO Decision"), found that the District offered the Student a FAPE.

86.     The IHO, as set forth in the IHO Decision, found that the District had sufficient evaluative material during the February 24, 2016 IEP meeting to make an appropriate program recommendation.

87.     The IHO, as set forth in the IHO Decision, found that the recommended program of resource room and speech services was not a denial of a FAPE.

88.     The IHO, as set forth in the IHO Decision, found there to be no dispute that S.P. has reading deficits but concluded that during the 2015-2016 school year, S.P. made progress with a program very similar to the program recommended for the 2016-2017 school year.

89.     The IHO, as set forth in the IHO Decision, found that the District had proven that S.P. would continue to progress in her sixth (6th) grade year because S.P.'s 2016-2017 IEP: contained academic and speech goals that addressed her areas of deficit; offered daily resource room at a ratio of 5 students to 1 teacher which would address S.P.'s attention difficulties and other deficits; offered other supports and accommodations to assist S.P. in the classroom and during testing.

90.     The IHO, as set forth in the IHO Decision, found that the District did not deny S.P. a FAPE even though the District's CSE reduced S.P.'s Speech and Language services by one session per week.

91.     The IHO, as set forth in the IHO Decision, found that the goals contained in the IEP were appropriate and not a denial of a FAPE.

92.     The IHO, as set forth in IHO Decision, found that the Parents were not denied the opportunity to fully participate during the development of the 2016-2017 IEP.

93.     The IHO, as set forth in the IHO Decision, found that the District's CSE did not predetermine S.P.'s program.

94.     The IHO, as set forth in the IHO Decision, found that the CSE considered the Defendants' pediatrician's recommendations in 2013.

95.     The IHO correctly determined that she could not address the Parents' claim that the District's Turtle Hook Middle School placement for 2016-2017 school year is inappropriate, because an analysis of the Parents' claim with regard to the Student's specific public school

placement would have required the IHO to speculate to determine what might have happened had the District been able to implement S.P.'s IEP. The District never had an opportunity to implement the 2016-2017 IEP because S.P. was unilaterally placed at Vincent Smith prior to the beginning of the 2016-2017 school year.

96.   The IHO, as set forth in the IHO Decision, erred in finding that Vincent Smith is an appropriate placement for S.P.

97.   The IHO, as set forth in the IHO Decision, erred in finding that the equities weighed in favor of the Defendants and that there would be no equitable bar to the parents' request for a reimbursement if a denial of FAPE was found.

98.   On or about October 5, 2017, Defendants served the District with a Notice of Intention to Seek Review, in which Defendants advise Plaintiff of their intent to appeal the IHO Decision to the New York State Department of Education's SRO.

99.   On or about October 5, 2017, Plaintiff served Defendants with the District's Notice of Intention to Cross-Appeal to the SRO the portion of the IHO's Decision that found Vincent Smith School appropriate and that found the equities to weigh in favor of the Parents.

100.   After serving pleadings and memoranda of law, the SRO, Steven Krolak, issued a decision on November 29, 2017 ("SRO Decision") in which he awarded Defendants reimbursement for the total tuition costs at Vincent Smith for the 2016-2017 school year, and dismissed the District's Cross-Appeal.

101.   The SRO Decision reversed the portion of the IHO Decision that found that the District had offered S.P. a FAPE for the 2016-2017 school year and denied the Parents' request for reimbursement of the cost of S.P.'s tuition at Vincent Smith for the 2016-2017 school year.

102.    Notwithstanding the SRO Decision to reverse the IHO Decision on the issue of whether the District offered S.P. a FAPE for the 2016-2017 school year, the SRO decided in favor of the District as to the claim that the Parents were not afforded an opportunity to participate in the CSE process when the SRO found that the Parents had an opportunity to meaningfully participate in the February 2016 CSE meeting.

103.    Notwithstanding the SRO Decision to reverse the IHO Decision on the issue of whether the District offered S.P. a FAPE for the 2016-2017 school year, the SRO decided in favor of the District as to the Parents' claim that the District predetermined S.P.'s placement when the SRO found that the District did not predetermine S.P.'s placement at the February 2016 CSE meeting.

104.    Notwithstanding the SRO Decision to reverse the IHO Decision on the issue of whether the District offered S.P. a FAPE for the 2016-2017 school year, the SRO decided in favor of the District as to the Parents' claim that the District failed to consider the evaluation reports that indicated S.P. had a reading disorder when the SRO found that the February 2016 CSE considered sufficient evaluative information regarding S.P.'s needs, abilities and functional performance to develop her IEP.

105.    The SRO also concluded that the District's CSE was not required to offer and make diagnoses even though Defendants had claimed in the DPC that the District's CSE's failure to diagnose S.P.'s reading disability was a violation of FAPE.

106.    Notwithstanding the SRO Decision to reverse the IHO Decision on the issue of whether the District offered S.P. a FAPE for the 2016-2017 school year, the SRO decided in favor of the District as to the Parents' claim that S.P.'s annual goals in her 2016-2017 IEP were inappropriate, when the SRO found that the evidence in the Impartial Hearing record shows that

the annual goals in the February 2016 IEP align with, and target, S.P.'s needs identified in her present levels of performance, appropriately addresses her needs, and were sufficiently specific and measurable to guide instruction and to evaluate her progress over the course of the 2016-2017 school year.

107.    Notwithstanding the SRO Decision to reverse the IHO Decision on the issue of whether the District offered S.P. a FAPE for the 2016-2017 school year, the SRO decided in favor of the District as to the Parents' claim that S.P was denied a FAPE for the 2016-2017 school year on account of the District's CSE's decision to reduce the frequency of speech-language services, when the SRO found that the February 24, 2016 CSE recommendation of two 30-minute sessions per week of speech-language therapy did not result in a denial of a FAPE to the Student.

108.    Notwithstanding the SRO Decision to reverse the IHO Decision on the issue of whether the District offered S.P. a FAPE for the 2016-2017 school year, the SRO decided in favor of the District as to the Parents' claim that S.P. required counseling services, when the SRO found that the IHO was correct in deciding that counseling services were not warranted for the Student in the 2016-2017 school year.

109.    Notwithstanding the SRO Decision to reverse the IHO Decision on the issue of whether the District offered S.P. a FAPE for the 2016-2017 school year, the SRO decided in favor of the District as to the Parents' claim that they should have been offered parent counseling and training in the February 2016 IEP, when the SRO found that the IHO was correct in deciding that the failure to recommend parent counseling and training did not constitute a procedural violation or a failure to offer a FAPE for the 2016-2017 school year.

110.    Notwithstanding the SRO Decision to reverse the IHO Decision on the issue of whether the District offered S.P. a FAPE for the 2016-2017 school year, the SRO correctly found that S.P. made progress during the 2014-2015 and 2015-2016 school years in a program similar to the program developed for the 2016-2017 school year.

111.    The SRO Decision in based on incorrect analysis and contradicts NYSED's own guidance inasmuch as NYSED guidance sets forth that "specialized reading instruction" need not appear on an IEP and that such instruction may be provided through various means.

112.    Despite not listing AIS general education reading services on S.P.'s IEP in prior years, the SRO concedes that S.P. had made progress in reading while receiving AIS in prior school years, including but not limited to the 2014-2015 and 2015-2016 school years.

113.    S.P. received AIS reading during the 2014-2015 and 2015-2016 school years despite the fact that the 2014-2015 and 2015-2016 IEPs do not list AIS reading as a special education service.

114.    The SRO erroneously ignored testimony and evidence in the Impartial Hearing record, which supports the fact that the District's Turtle Hook Middle School, where S.P. would have attended school for the 2016-2017 school year, provides and offers AIS reading in the manner provided to S.P. in past years.

115.    The SRO Decision is inconsistent and erroneous as a matter of law as the SRO concluded S.P. made progress under prior IEPs that were similar to the IEP developed for the 2016-2017 school year, but then finds that the District failed to offer FAPE by failing to list AIS reading instruction on the IEP even though substantively S.P. was scheduled to receive AIS services at Turtle Hook Middle School during the 2016-2017 school year.

116.    The SRO erroneously concluded that the IEP was rendered inadequate and unable to offer a FAPE to S.P. by virtue of the failure to list AIS reading instruction as a service available to S.P. even though the SRO did not determine or issue any findings, that the failure to list AIS reading instruction on the IEP (1) impeded the child's right to a FAPE; (2) significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of a FAPE to the child; or (3) caused a deprivation of educational benefits.

117.    As the SRO had already concluded that S.P. had made progress in prior school years with AIS reading services, the SRO does not dispute that the District developed an IEP that was reasonably calculated to enable S.P. to receive educational benefits; that it was likely to produce progress, not regression, except for failing to list AIS reading services on the IEP.

118.    The District's alleged procedural violation, even assuming *arguendo* such alleged procedural violation occurred, did not impede S.P.'s right to FAPE; did not significantly impede the parents' opportunity to participate; or did not cause a deprivation of educational benefits.

119.    By virtue of the foregoing, and for the reasons discussed herein, the specific omission of AIS reading instruction did not result in an inappropriate IEP.  As the SRO's award of tuition reimbursement is based on the SRO's finding that S.P. was "denied a FAPE for its failure to address the student's reading needs during the 2016-2017 school year. . . ," it is respectfully requested that this Court annul and vacate the SRO's Decision in its entirety.

120.    By virtue of the foregoing, and for the reasons discussed herein, it is respectfully requested that this Court affirm the portion of the IHO Decision that found the District to have offered the Student a FAPE for the 2016-2017 school year and denied the Parents' request for reimbursement and/or prospective funding for the tuition and expenses of the Student's program at Vincent Smith

121.    By virtue of the foregoing, and for the reasons discussed herein, it is respectfully requested that this Court annul and vacate the SRO's dismissal of the District's cross-appeal and the portion of the IHO Decision that found in favor of the Defendants on their choice of placement, and issue an independent decision finding that the Defendants' unilateral placement, Vincent Smith School, is inappropriate and/or unduly restrictive within the meaning of the IDEA.

122.    By virtue of the foregoing, and for the reasons discussed herein, it is respectfully requested that this Court annul and vacate: (1) the SRO's dismissal of the District's cross-appeal; and (2) the portion of the IHO Decision that found in favor of the Defendants on their choice of placement.  In furtherance of the foregoing, it is respectfully requested that this Court adjudge, order and declare that the Parents' unilateral placement at Vincent Smith School is inappropriate and/or unduly restrictive within the meaning of the IDEA.

123.    By virtue of the foregoing, and for the reasons discussed herein, it is respectfully requested that this Court annul and vacate: (1) the SRO's dismissal of the District's cross-appeal; and (2) the portion of the IHO Decision that found in favor of the Defendants as to whether there would be an equitable bar to reimbursement.  In furtherance of the foregoing, it is respectfully requested that this Court adjudge, order and declare that the equities weigh in favor of the District such that the Defendants should be barred in whole or in part from being granted the relief they seek, as the record of the Impartial Hearing shows that the Parents had predetermined their decision to place S.P. at Vincent Smith School and did not collaborate with the District's CSE, or allow the District's CSE an opportunity to consider the Parents' concerns.

### AS AND FOR PLAINTIFF'S FIRST CLAIM AGAINST DEFENDANTS

124.    The Plaintiff repeats and realleges the allegations contained in paragraphs 1-123 as if set forth fully herein.

125.    The Court should annul and vacate the SRO Decision and deny Defendants any and all recovery sought in their DPC, including but not limited to tuition reimbursement and/or funding for S.P.'s placement at Vincent Smith School, on grounds that Plaintiff offered S.P. a FAPE in the LRE for the 2016-2017 school year.

126.    The record of the Impartial Hearing and the facts herein establish, as a matter of law, that the District had sufficient evaluative material during the February 24, 2016 IEP meeting to make an appropriate program recommendation.

127.    The record of the Impartial Hearing and the facts herein establish, as a matter of law, that the recommended program of resource room and speech services was not a denial of a FAPE.

128.    The record of the Impartial Hearing and the facts herein establish, as a matter of law, that during the 2015-2016 and prior school years, S.P. made progress with programs very similar to the program recommended for the 2016-2017 school year.

129.    The record of the Impartial Hearing and the facts herein establish, as a matter of law, that S.P. was likely to continue to progress in her sixth (6th) grade year because S.P.'s 2016-2017 IEP: contained academic and speech goals that addressed her areas of deficit; offered daily resource room at a ratio of 5 students to 1 teacher which would address S.P.'s attention difficulties and other deficits; offered other supports and accommodations to assist S.P. in the classroom and during testing.

130.    The record of the Impartial Hearing and the facts herein establish, as a matter of law, that the District did not deny S.P. a FAPE even though the District's CSE reduced S.P.'s Speech and Language services by one session per week.

131.    The record of the Impartial Hearing and the facts herein establish, as a matter of law, that the goals contained in S.P.'s IEP were appropriate and not a denial of a FAPE.

132.    The record of the Impartial Hearing and the facts herein establish, as a matter of law, that the Parents were not denied the opportunity to fully participate during the development of the 2016-2017 IEP.

133.    The record of the Impartial Hearing and the facts herein establish, as a matter of law, that the District's CSE did not predetermine S.P.'s program.

134.    The record of the Impartial Hearing and the facts herein establish, as a matter of law, that the CSE considered the Defendants' pediatrician's recommendations in 2013.

135.    The record of the Impartial Hearing and the facts herein establish, as a matter of law, that the District's CSE was not required to offer and make diagnoses even though Defendants had claimed in the DPC that the District's CSE failure to diagnose S.P.'s reading disability amounted to a failure to offer a FAPE.

136.    The record of the Impartial Hearing and the facts herein establish, as a matter of law, that S.P. did not need counseling services in the 2016-2017 school year in order for S.P. to be offered a FAPE.

137.    The record of the Impartial Hearing and the facts herein establish, as a matter of law, that Defendants did not need an offer of parent counseling and training in the February 2016 IEP, year in order for S.P. to be offered a FAPE.

138.    By virtue of the foregoing, it is respectfully requested that this Court grant an order or judgment, annulling and vacating the SRO Decision on grounds that S.P. was offered a FAPE in the LRE for the 2016-2017 school year.

**AS AND FOR PLAINTIFF'S SECOND CLAIM AGAINST DEFENDANTS**

139.    The District repeats and realleges the allegations contained in paragraphs 1-138 as if set forth fully herein.

140.    The record of the Impartial Hearing and the facts herein establish that, as a matter of law, the SRO Decision is based on incorrect analysis and contradicts NYSED's own guidance inasmuch as NYSED guidance sets forth that "specialized reading instruction" need not appear on an IEP and that such instruction may be provided through various means.

141.    The record of the Impartial Hearing and the facts herein establish that the District's Turtle Hook Middle School, where S.P. would have attended school for the 2016-2017 school year, provides and offers AIS reading in the manner provided to S.P. in past years.

142.    The record of the Impartial Hearing and the facts herein establish, as a matter of law, that the failure to list AIS reading instruction on the IEP as a service available to S.P. did not:  (1) impede the S.P.'s right to a FAPE; (2) significantly impede the Parents' opportunity to participate in the decision making process regarding the provision of a FAPE to the child; or (3) cause a deprivation of educational benefits.

143.    By virtue of the foregoing, it is respectfully requested that this Court grant an order or judgment, annulling and vacating the SRO Decision on grounds that S.P. was offered a FAPE in the LRE for the 2016-2017 school year inasmuch as the record of the Impartial Hearing and the facts herein establish that the Student's reading needs during the 2016-2017 school year

26

were to be addressed through AIS reading services, as well as through the Student's special education and related services set forth in the IEP of February 2016.

## AS AND FOR PLAINTIFF'S THIRD CLAIM AGAINST DEFENDANTS

144.    The District repeats and realleges the allegations contained in paragraphs 1-143 as if set forth fully herein.

145.    The record of the Impartial Hearing and the facts herein establish that, as a matter of law, the unilateral parent placement, a day program at an unapproved private school known as Vincent Smith School, is not appropriate under the IDEA and does not represent the LRE for S.P.

146.    The record of the Impartial Hearing and the facts herein establish that, as a matter of law, Vincent Smith School is not specifically designed to meet the unique needs of S.P., a student with disabilities.

147.    The record of the Impartial Hearing and the facts herein establish that, as a matter of law, S.P.'s purported progress, and Vincent Smith School's chief benefits that allegedly enabled S.P. to make progress, are the kind of educational and environmental advantages and amenities that might be preferred by parents of any child, disabled or not.

148.    By virtue of the foregoing, it is respectfully requested that this Court grant an order or judgment, annulling and vacating the SRO Decision to dismiss the District's cross-appeal, and for this Court to order, adjudge and declare that the Defendants' unilateral parent placement at Vincent Smith School was not appropriate under the IDEA and does not represent the LRE for S.P.

## AS AND FOR PLAINTIFF'S FOURTH CLAIM AGAINST DEFENDANTS

149.    The District repeats and realleges the allegations contained in paragraphs 1-148 as if set forth fully herein.

150.    The record of the Impartial Hearing and the facts herein establish that, as a matter of law, the Defendants should be barred in whole or in part from being granted the relief they seek, as the Parents had predetermined their decision to place S.P. at Vincent Smith School and did not collaborate with the District's CSE, or allow the District's CSE an opportunity to consider the Parents' concerns.

151.    By virtue of the foregoing, it is respectfully requested that this Court grant an order or judgment, annulling and vacating the SRO Decision to dismiss the District's cross-appeal, and for this Court to order, adjudge and declare that the equities weigh in favor of the District such that the Defendants should be barred in whole or in part from being granted the relief they seek.

**WHEREFORE**, Plaintiff BOARD OF EDUCATION OF THE UNIONDALE UNION FREE SCHOOL DISTRICT respectfully demands an Order or Judgment in favor of Plaintiff and against Defendants J.P. and S.R., individually, and as parents and legal guardians of S.P., a minor:

1) On the Plaintiff's First Claim against Defendants, annulling and vacating the SRO Decision of November 29, 2017, on grounds that S.P. was offered a FAPE in the LRE for the 2016-2017 school year;

2) On the Plaintiff's Second Claim against Defendants, annulling and vacating the SRO Decision of November 29, 2017, on grounds that S.P. was offered a FAPE in the LRE for the 2016-2017 school year;

3) On the Plaintiff's Third Claim against Defendants, annulling and vacating the SRO Decision of November 29, 2017 to dismiss the District's cross-appeal, and for this Court to order, adjudge and declare that the Defendants' unilateral parent placement at Vincent Smith School is not appropriate under the IDEA and does not represent the LRE for the Student;

4) On the Plaintiff's Fourth Claim against Defendants, annulling and vacating the SRO Decision of November 29, 2017 to dismiss the District's cross-appeal, and for this Court to order, adjudge and declare that the equities weigh in favor of the District such that the Defendants should be barred in whole or in part from being granted the relief they seek.

5) Granting an Order denying Defendants the relief requested in the administrative proceedings, and, in particular, specifically denying reimbursement or funding for Defendants' unilateral placement of S.P. at Vincent Smith School for the 2016-2017 school year based upon an independent and *de novo* review of the entire administrative record of the Impartial Hearing Officer and the State Review Officer, and any other submissions that this Court may deem relevant or material; and

6) Order such other and further relief as the Court may deem just and proper.

Dated: Hauppauge, New York
February 20, 2018

INGERMAN SMITH, L.L.P.

S/      David F. Kwee
_____
By: DAVID F. KWEE (DK - 1199)
Attorneys for Plaintiff
BOARD OF EDUCATION OF THE
UNIONDALE UNION FREE SCHOOL
DISTRICT

150 Motor Parkway, Suite 400
Hauppauge, New York 11788
(631) 261-8834
dkwee@ingermansmith.com

To:

J.P.
355 Emerson Place, Uniondale, NY 11553
(516) 303-5181

S.R.
355 Emerson Place, Uniondale, NY 11553
(516) 303-5181

S.P., a minor
355 Emerson Place, Uniondale, NY 11553
(516) 303-5181