UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BOARD OF EDUCATION OF THE UNIONDALE
UNION FREE SCHOOL DISTRICT,

|  |  |
|---|---|
| Plaintiff, | **REPORT AND**<br>**RECOMMENDATION**<br>CV-18-1038 (JMA)(AYS) |

- against -

J.P. and S.R., individually, and as parents and legal
Guardians of S.P., a minor,

                                    Defendants.
----------------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

        Plaintiff, Board of Education of the Uniondale Union Free School District ("Plaintiff" or

the "District"), commenced this action on February 2, 2018, pursuant to Section 1415(i)(2) of the

Individuals with Disabilities Education Act ("IDEA"), as amended,[1] seeking review and vacatur

of the November 29, 2017 decision of the State Review Officer (the "SRO") of the New York

Department of Education (the "SRO Decision").  That decision awarded Defendants, J.P. and

S.R., acting on behalf of their minor child, S.P. ("Defendants"), tuition reimbursement for S.P.'s

placement at a private school known as the Vincent Smith School ("VSS").

        Shortly after commencement of the action, Defendants moved for a temporary restraining

order and preliminary injunction, seeking an order directing the District to reimburse and pay

S.P.'s tuition at VSS.  (Docket Entry ("DE") [15].)  By Report and Recommendation dated June

21, 2018, this Court recommended that Defendants' motion be granted with respect to the

---

[1]  The IDEA was reauthorized and amended by the Individuals with Disabilities Education
Improvement Act ("IDEIA") in 2004, Pub. L. No. 108-446, 118 Stat. 2647.  See E.M. v. New
York City Dep't of Educ., 785 F.3d 442, 445 n.1 (2d Cir. 2014).  As most courts do, this Court
will continue to refer herein to the statute, as amended, by the familiar acronym IDEA.

request for a temporary restraining order and preliminary injunction.  (DE [25].)  The District Court adopted the Report and Recommendation on August 15, 2018 and the District was directed to reimburse Defendants and to fund S.P.'s tuition at the VSS from November 29, 2017 through the conclusion of this action.  (DE [30].)

Thereafter, both the District and Defendants sought leave to file motions for summary judgment.  (DE [28], [29].)  The requests, as well as any ensuing motions, were referred to this Court by Judge Azrack and a briefing schedule was set.  Presently before the Court are the parties' cross-motions for summary judgment.  (DE [35], [43].)  By its motion, the District seeks to have the SRO Decision vacated.  Defendants seek, in their motion, to have the SRO Decision affirmed in part and vacated in part.

For the following reasons, this Court respectfully recommends that the District's motion for summary judgment be denied in its entirety, that Defendants' motion for summary judgment be granted in part and denied in part, and that the SRO Decision be affirmed in its entirety.

<u>BACKGROUND</u>

The relevant facts, as set forth below, are taken from the Local Civil Rule 56.1 statements of undisputed material facts submitted by the parties, as well as the documents offered by both parties in support of their respective motions.  The Court notes that while the parties complied with the Local Civil Rules by filing their 56.1 Statements, the submissions were not particularly helpful to the Court in that they are rife with argument and assertions when they should simply set forth the undisputed facts of this action.  The parties' respective arguments are to be set forth in their memoranda of law, not their 56.1 Statements.

I.      S.P.'s Educational History

S.P. is a minor child who has been diagnosed with dyslexia, attention deficit hyperactivity disorder, autism spectrum disorder, and reading and language disorders.  (Def. Local Civ. R. 56.1 Statement ("Def. 56.1") ¶ 1.)  S.P. attended school within the District at the Walnut Street School from Kindergarten through fifth grade.  (Pl. Local Civ. R. 56.1 Statement ("Pl. 56.1") ¶¶ 11-12.)  S.P. began her education in the District in a general education class. (Def. 56.1 ¶ 37.)  She was held back and repeated kindergarten.  (Id.)  Some of S.P.'s struggles included failing to learn the letters of the alphabet and difficulty writing her name.  (Id.)

In 2011, psychological testing indicated that S.P.'s Full Scale I.Q. score of 74 fell within the "Borderline Impaired range of cognitive development," placing her within the fourth percentile, below age-expectancy.  (Def. 56.1 ¶ 26.)  As per an educational evaluation performed in 2011, S.P.'s academic skills fell in the below average range, in that she could not identify all letters, did not "demonstrate any knowledge of basic sight words," and performed below average in the areas of spelling and math problem solving.  (Def. 56.1 ¶ 27.)  The District identified S.P. as a student with a disability in September 2011 and placed her in a general education class with resource room and group speech therapy.  (Def. 56.1 ¶ 39.)  S.P. was classified by the District as having a "Speech or Language Impairment."  (Def. 56.1 ¶ 2; Pl. 56.1 ¶¶ 15, 17.)

In 2013, an educational evaluation of S.P. found that her academic skills were mostly below average.  (Def. 56.1 ¶ 30.)  Her overall cognitive performance was "below age-appropriate," with her "weakest areas" being reading, early reading skills, and math fluency. (Def. 56.1 ¶¶ 29-30.)  As per the evaluation, S.P. did not attempt to use decoding skills, struggled with reading passages, and relied on pictures to gain understanding of text.  (Def. 56.1 ¶ 30.) Decoding, processing of multi-step directions, spelling and math problem solving were identified

as particularly challenging for S.P.  (Pl. 56.1 ¶ 18.)  A District psychological report from 2013 indicated that S.P. was "not progressing academically."  (Def. 56.1 ¶ 28.)

Pursuant to a neurodevelopmental evaluation performed in 2013, S.P. was diagnosed with dyslexia.  (Def. 56.1 ¶ 32.)  The evaluation recommended that S.P. "be placed in a self-contained special education setting for children with language and learning disorders," and receive a "specific program for children with reading disabilities."  (Def. 56.1 ¶ 32.)  In 2016, S.P. was diagnosed with autism spectrum disorder, borderline intellectual functioning, attention deficit hyperactivity disorder, and learning disability.  (Def. 56.1 ¶ 33.)  A neuropsychological evaluation recommended that she be placed in a small, specialized class.  (Id.)

Throughout her education, the District continued to recommend that S.P. remain in general education with one period per day of group resource room and group speech therapy.  (Def. 56.1 ¶ 40; Pl. 56. 1 ¶¶ 19, 21-22, 27.)  During this time, S.P. continued to have "great difficulty in speech or language," which impacted her academic achievement.  (Def. 56.1 ¶ 34.)  A speech and language evaluation performed by the District found that S.P.'s language skills fell "below age level expectations" and that her language deficits were "scattered among all areas of language."  (Id.)  S.P.'s progress was "very inconsistent" and "there was always some type of regression" toward skills.  (Id.)  S.P.'s District and private evaluations from 2011 on continually demonstrated that her cognitive and academic skills were below grade level expectations and S.P. was identified as a "struggling student."  (Def. 56.1 ¶¶ 42, 54.)

Upon completion of fifth grade, children within the District attend either Turtle Hook Middle School ("Turtle Hook") or Lawrence Road Middle School, depending on where they reside within the District.  (Pl. 56.1 ¶ 13.)  S.P. was to attend Turtle Hook during the 2016-2017 school year.  (Id.)  As a student with a disability, S.P. was entitled to special education supports

and services in order to provide her with a Free and Appropriate Public Education ("FAPE") during the 2016-2017 school year.  (Def. 56.1 ¶ 3.)

II.    S.P.'s IEP for the 2016-2017 School Year

On February 24, 2016, a Committee on Special Education ("CSE") subcommittee convened to develop an Individualized Education Plan ("IEP") for S.P. for the 2016-2017 school year (the "2016-17 IEP").  (Pl. 56.1 ¶ 31; Def. 56.1 ¶ 5.)  The 2016-17 IEP recommended one forty-three-minute period per day of Resource Room in a ratio of 5:1 (5 students to one teacher) and two thirty-minute sessions per week of speech and language therapy, again in a ratio of 5:1. (Def. 56.1 ¶ 5; Pl. 56.1 ¶ 33.)  The 2016-17 IEP did not recommend Academic Intervention Services ("AIS") for S.P.  (Def. 56.1 ¶ 8.)  The 2016-17 IEP also reduced the amount of S.P.'s speech and language therapy from the previous year and did not recommend individual speech and language therapy.  (Def. 56.1 ¶ 9.)  Finally, the 2016-17 IEP did not offer S.P. any counseling services; nor did it offer parent training or counseling for Defendants J.P. and S.R. (Def. 56.1 ¶ 11.)

III.    Plaintiffs' Due Process Complaint

On August 29, 2016, Defendants filed a Due Process Complaint ("DPC") with the District, asserting that the District failed to recommend an appropriate program to provide S.P. with a FAPE for the 2016-2017 school year.  (Pl. 56.1 ¶ 39; Def. 56.1 ¶ 65.)  The DPC provided the District with notice that Defendants would be placing S.P. at the Vincent Smith School for the 2016-2017 school year and that they would be seeking reimbursement for S.P.'s tuition at VSS for that year.  (Pl. 56.1 ¶ 56; Def. 56.1 ¶¶ 65, 91.)

The grounds for the DPC included that the District failed to rely on sufficient evaluative information when developing the 2016-17 IEP and, in particular, failed to conduct an updated

speech-language evaluation.  (Pl. 56.1 ¶ 40.)  According to the DPC, the District failed to consider the "full continuum of programs" during the February 2016 CSE subcommittee meeting, did not treat Defendants as "full and equal members," and failed to "meaningfully consider" Defendants' input or the recommendations of S.P.'s developmental pediatrician.  (Pl. 56.1 ¶ 41.)  Defendants' DPC further asserted that the District improperly determined S.P. to be a student with a speech or language impairment when she should have been classified as a student with a learning disability.  (Pl. 56.1 ¶ 42.)

The DPC also claimed that the District failed to "fully and accurately report" S.P.'s present performance levels or identify S.P. as having been diagnosed with dyslexia.  (Pl. 56.1 ¶ 43.)  Defendants also asserted that the 2016-17 IEP provided insufficient accommodations and supports, and that the District failed to develop appropriate goals for S.P. in that the goals recommended for the 2016-2017 school year were "identical" to S.P.'s goals during the 2015-2016 school year.  (Pl. 56.1 ¶¶ 44-45.)

According to the DPC, the 2016-17 IEP also failed to address S.P.'s deficits in the areas of decoding, language, writing and math, and failed to offer S.P. "intensive reading instruction" despite her reading deficiencies.  (Pl. 56.1 ¶¶ 47-48.)  Defendants also asserted that the 2016-17 IEP failed to recommend sufficient related services, including "individualized" speech-language therapy, parent counseling and training, and special education transportation, and also failed to include sufficient supplementary aids, program modifications or sufficient behavioral interventions.  (Pl. 56.1 ¶¶ 50-54.)  Finally, the DPC claimed that the District's CSE inappropriately proposed that S.P. "participate in the same assessments as general education students."  (Pl. 56.1 ¶ 55.)

IV.    <u>S.P.'s Placement at VSS</u>

S.P. began attending VSS in September 2016 – her sixth-grade year – where she was placed in a small class of four students with similar needs.   (Pl. 56.1 ¶ 38; Def. 56.1 ¶ 66-67.) S.P.'s classroom teacher at VSS was certified in both general and special education.  (Def. 56.1 ¶ 69.)  S.P. received 1:1 (one teacher to one child) support and program modifications as needed to address her individual needs, including frequent reminders and redirections.  (Def. 56.1 ¶ 70.)

VSS assessed S.P.'s reading level, finding that she was dyslexic with "very poor decoding skills [and] spelling skills, which impaired her reading and comprehension.  (Def. 56.1 ¶ 71.)  To address these issues, VSS provided instruction that was "very individualized" for S.P.'s needs, including sounding out words, spelling, and reading comprehension through systematic and explicit intervention.  (Def. 56.1 ¶ 73.)  S.P. also received three weekly periods of pull-out phonics-based reading with a reading instructor, which improved her reading skills with respect to decoding, grammar, spelling, and sounding out words.  (Def. 56.1 ¶ 76.)

VSS also addressed S.P.'s math skills, which, during her sixth-grade year, were at a fourth-grade level.  (Def. 56.1 ¶ 77.)  VSS provided tailored interventions to address S.P.'s weaker areas, including assistance with word problems, review of homework instructions and extra help.  (<u>Id.</u>)  S.P.'s report card demonstrated that she was progressing and meeting her targets with respect to math.  (Def. 56.1 ¶ 78.)

S.P. was also provided speech therapy and counseling at VSS, both individually and in a group setting.  (Def. 56.1 ¶ 79.)  S.P. learned to follow multi-step directions, expanded her vocabulary, expressed herself better, and logically sequenced a series of sentences.  (Def. 56.1 ¶ 81.)

With respect to counseling, S.P. received weekly one-on-one counseling sessions at VSS with a licensed social worker. (Def. 56.1 ¶ 82.) During these sessions, S.P. worked on communicating, identifying and expressing feelings instead of internalizing them, and conflict resolution. (Def. 56.1 ¶ 83.) During the group sessions, S.P. worked on social skills, addressing topics such as conflict resolution, coping with feelings, interacting with peers, bullying, and empathy. (Def. 56.1 ¶ 84.)

V.    The Impartial Hearing

Defendants' August 29, 2016 DPC requested an impartial hearing, which was held over ten non-consecutive dates between December 13, 2016 and June 19, 2017. (Pl. 56.1 ¶ 57; Def. 56.1 ¶ 94.) On September 19, 2017, the Impartial Hearing Officer ("IHO") issued its decision (the "IHO Decision"), which found the following: (1) that the District offered S.P. a FAPE for the 2016-2017 school year; (2) that VSS provided S.P. with an educational program that met her needs; and (3) that Defendants cooperated with the District such that equitable considerations would not bar reimbursement of tuition if denial of a FAPE was found. (Pl. 56.1 ¶¶ 58, 77-78; Def. 56.1 ¶ 95.)

The IHO Decision found that the District considered sufficient evaluative materials at the February 2016 CSE subcommittee meeting to develop an appropriate IEP for S.P.'s 2016-2017 school year, which included evaluation reports, reports regarding S.P.'s achievement test scores, and input from S.P.'s teachers and speech pathologist. (Pl. 56.1 ¶ 59.) The IHO Decision further found that Defendants participated meaningfully during the February 2016 CSE subcommittee meeting and that the District had not predetermined S.P.'s 2016-17 IEP. (Pl. 56.1 ¶ 60.)

With respect to the 2016-17 IEP itself, the IHO Decision found that the goals designated in the IEP were appropriate in that they addressed S.P.'s deficits and were designed to meet her

needs.  (Pl. 56.1 ¶ 65.)  The IHO Decision also found that the recommendation in the 2016-17

IEP to have S.P. remain in daily resource room with group-based speech-language services – as

opposed to individualized services, as requested by Defendants – was appropriate because S.P.

had made progress in a very similar program during the 2015-2016 school year and the

recommendation was "appropriate to address [S.P.'s] academic and speech deficits and complied

with (least restrictive environment (LRE)) requirements."  (Pl. 56.1 ¶¶ 69-71.)  As to

Defendants' claim that the 2016-17 IEP failed to recommend sufficient related services, such as

counseling, the IHO Decision found such a failure did not constitute denial of a FAPE because

the evidence available to the February 2016 CSE subcommittee demonstrated that S.P. was

generally compliant and did not engage in interfering behaviors or display socialization concerns

indicating that counseling was necessary.  (Pl. 56.1 ¶¶ 64, 72.)

Notwithstanding the IHO Decision's finding that the District offered S.P. a FAPE for the

2016-2017 school year, it also determined, as stated above, that VSS was an appropriate

placement for S.P. and there was no equitable bar to Defendants' request for reimbursement of

tuition if denial of a FAPE was found.  (Pl. 56.1 ¶¶ 77-78.)

VI.     The SRO Decision

Defendants appealed the IHO Decision, in part, to the New York State Education

Department's Office of State Review, asserting that the IHO erred when it found that the District

offered S.P. a FAPE for the 2016-2017 school year and in denying tuition reimbursement.  (Pl.

56.1 ¶ 79; Def. 56.1 ¶ 96.)  The District cross-appealed the IHO Decision with respect to the

findings that VSS was an appropriate program for S.P. and that equitable considerations favored

Defendants.  (Pl. 56.1 ¶¶ 80-83; Def. 56.1 ¶ 97.)

By decision dated November 29, 2017, a State Review Officer sustained Defendants'
appeal and dismissed the District's cross-appeal.  (Def. 56.1 ¶ 98.)  Specifically, the SRO
reversed the IHO Decision with respect to its finding that the District offered S.P. a FAPE for the
2016-2017 school year and the denial of Defendants' request for reimbursement.  (Def. 56.1 ¶
99.)  The SRO ordered the District to reimburse Defendants for the full cost of S.P.'s tuition at
VSS.  (Id.)

In rendering its decision, the SRO agreed with the IHO in finding that Defendants were
"afforded meaningful participation" at the February 2016 CSE subcommittee meeting, during
which they were able to raise concerns about the recommendations contained in the 2016-17 IEP
and the District explained to Defendants why it did not recommend that S.P. attend a special
class placement.  (Pl. 56.1 ¶ 85.)  The SRO also agreed with the IHO that the District did not
predetermine S.P.'s academic program for the 2016-2017 school year and that the District relied
on sufficient evaluative material regarding S.P.'s deficiencies, needs, abilities and functional
performance in developing the 2016-17 IEP.  (Pl. 56.1 ¶¶ 86-87.)  The SRO further agreed with
the IHO that the goals contained in the 2016-17 IEP were appropriate for S.P. in that they
targeted and appropriately addressed her needs.  (Pl. 56.1 ¶ 88.)

The SRO Decision aligned with the IHO Decision in other respects, as well, including
finding the recommendation of two thirty-minute group-based sessions of speech therapy per
week to be appropriate, that counseling services were not warranted for S.P. since she appeared
to have "no social or emotional needs that should be addressed through special education," and
that Defendants did not appear to need counseling or training to assist them in understanding
S.P.'s needs.  (Pl. 56.1 ¶¶ 89-91.)  The SRO Decision determined that S.P. was making some
progress during her years in the District, even though she still struggled with the pace of the

general education classroom, finding that based on her prior IEP's, S.P. was either progressing "gradually" or "satisfactorily" toward all of her annual goals.  (Pl. 56.1 ¶¶ 92-97.)

Despite agreeing with much of the IHO Decision, the SRO ultimately determined that the District did not offer S.P. a FAPE for the 2016-2017 school year and reversed the decision of the IHO, basing its finding on the fact that the District failed to recommend a specialized reading program in the 2016-17 IEP.  (Pl. 56.1 ¶¶ 100, 121.)  The SRO affirmed the IHO Decision with respect to the findings that VSS was an appropriate placement for S.P. and that equitable considerations weighed in favor of Defendants with respect to their request for tuition reimbursement.  (Pl. 56.1 ¶¶ 142, 159.)

VII.    The Federal Action

The District commenced the within action on February 20, 2018, pursuant to the IDEA, seeking to annul and vacate the SRO Decision.  (Pl. 56.1 ¶ 160; Def. 56.1 ¶ 103.)  Defendants filed their Answer to the District's Complaint on March 16, 2018.  (Pl. 56.1 ¶ 161; Def. 56.1 ¶ 104.)  As stated above, Defendants moved for and were granted a temporary restraining order and preliminary injunction directing the District to reimburse and pay S.P.'s tuition at VSS through the conclusion of this action.  Now before the Court are the parties' cross-motions for summary judgment in which the District seeks to vacate and annul the SRO Decision and Defendants seek to have it upheld in part and vacated in part.

## DISCUSSION

I.    Statutory Framework

The IDEA requires the school district of residence of a child with a disability to offer that child a FAPE, which is defined as special education and related services, provided at public expense, that meet the standards of the State educational agency and are provided in conformity

with an IEP.  See 20 U.S.C. §§ 1400(d)(1)(A), 1401(9), 1414(d); see also New York City Dep't of Educ. v. S.S., No. 09 Civ. 810, 2010 WL 983719, at *5 (S.D.N.Y. Mar. 17, 2010).  If the parent of a child with a disability believes the IEP proffered by a school district does not offer a FAPE, the IDEA provides "procedural safeguards that enable parents and students to challenge the local educational agency's decisions."  Murphy v. Arlington Cent. Sch. Dist., 297 F.3d 195, 197 (2d Cir. 2002) (citing 20 U.S.C. § 1415).

Either the parent or the school district may file a due process complaint and request a due process hearing with respect to a challenged IEP.  See 20 U.S.C. § 1415(b)(6).  In New York, there is a two-tier process for reviewing IDEA due process complaints: first, the claims are heard by an IHO, whose decision can then be appealed to the SRO, as occurred in the within action.  See N.Y. Educ. Law § 4404.  Next, either the parent or the school district may seek judicial review of an SRO's decision in state or federal court.  See 20 U.S.C. § 1415(i).  "Courts have been granted broad authority under the IDEA to grant whatever relief they deem appropriate."  S.S., 2017 WL 983719, at *5 (citing cases); see also 20 U.S.C. § 1415(i)(2).

II.    Standard of Review

In cases such as this one, "a motion for summary judgment functions as an appeal from the SRO's administrative decision below."  B.K. v. New York City Dep't of Educ., 12 F. Supp. 3d 343, 355 (E.D.N.Y. 2014) (citation omitted); see also M.H. v. New York City Dep't of Educ., 685 F.3d 217, 226 (2d Cir. 2012) ("Though the parties in an IDEA action may call the procedure a motion for summary judgment, the procedure is in substance an appeal from an administrative determination, not a summary judgment [motion].") (citation and internal quotation marks omitted) (alteration in original).  In determining the parties' motions, the Court "is called upon to conduct an independent review of the administrative record, along with any additional evidence

submitted by the parties – of which there is none here – and to determine by a preponderance of the evidence whether the IDE[]A's strictures have been satisfied." B.K., 12 F. Supp. 3d at 355 (citing 20 U.S.C. § 1415(i)(2)(C)) (additional citations omitted).

"[T]he role of the federal courts in reviewing state educational decisions under the IDEA is 'circumscribed,'" M.H., 685 F.3d at 240 (quoting Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112 (2d Cir. 2007)), and has been characterized as "modified de novo review." B.K., 12 F. Supp. 3d at 355 (citation omitted). While the Court must "engage in an independent review of the administrative record," id. (quoting Gagliardo, 489 F.3d at 112-13), such review "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Board of Educ. v. Rowley, 458 U.S. 176, 206 (1982).

Rather, "federal courts reviewing administrative decisions must give 'due weight' to these proceedings, mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" Gagliardo, 489 F.3d at 113 (quoting Rowley, 458 U.S. at 206, 208). Reviewing courts are not permitted to make "subjective credibility assessment[s]," and may not "ch[oose] between the views of conflicting experts on . . . controversial issue[s] of educational policy . . . in direct contradiction of the opinions of state administrative officers who had heard the same evidence." M.H., 685 F.3d at 240 (quoting Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 383 (2d Cir. 2003)) (alterations in original). Instead, courts must generally "defer to the final decision of the state authorities, even where the reviewing authority disagrees with the hearing officer." M.H., 685 F.3d at 241 (quoting A.C. v. Board of Educ., 553 F.3d 165, 171 (2d Cir. 2009)). Where, as here, the SRO's decision "conflicts with the earlier decision of the IHO, the IHO's decision may

be afforded diminished weight." M.H., 685 F.3d at 241 (quoting A.C., 553 F.3d at 171). However, the SRO's or IHO's factual findings "must be 'reasoned and supported by the record' to warrant deference." M.H., 685 F.3d at 241 (quoting Gagliardo, 489 F.3d at 114.)

In considering claims for tuition reimbursement under the IDEA, courts apply the three-step Burlington/Carter test. See B.K., 12 F. Supp. 3d at 356 (citing Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir. 2005)); see also Florence Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7 (1993); School Comm. of Town of Burlington v. Dep't of Educ., 471 U.S. 359 (1985). The Court must first determine "whether the school district's proposed [IEP] will provide the student with a FAPE." B.K., 12 F. Supp. 3d at 356 (citing C.F. v. New York City Dep't of Educ., 746 F.3d 68, 72-73 (2d Cir. 2014)). This analysis requires the Court to decide whether the school district complied with the IDEA in creating the student's IEP and whether the IEP is "reasonably calculated to enable the child to receive educational benefits." M.H., 685 F.3d at 245 (quoting Grim, 346 F.3d at 381) (additional citation omitted). "If an IEP is deficient – either procedurally or substantively – the [C]ourt then asks 'whether the private schooling obtained by the parents [for the child] is appropriate to the child's needs.'" M.H., 685 F.3d at 345 (quoting T.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 252 (2d Cir. 2009)). Finally, the Court determines whether "the equities favor reimbursement" of tuition. B.K., 12 F. Supp. 3d at 356 (citing C.F., 746 F.3d at 73) (additional citations omitted).

III.    Issues for Judicial Review

In appealing the SRO Decision, the District argues that the SRO incorrectly found that the District failed to offer S.P. a FAPE, particularly with respect to the substantive adequacy of the 2016-17 IEP. The District further argues that both the IHO and the SRO incorrectly ruled that Defendants' unilateral placement of S.P. at VSS was appropriate, and that both incorrectly

found that the equities favor reimbursement of tuition.  Accordingly, the District requests that the Court vacate and annul the SRO Decision.

For their part, Defendants argue that the SRO correctly found that the District failed to offer S.P. a FAPE by failing to address her reading needs in the 2016-17 IEP and, therefore, that portion of the SRO Decision should be upheld.  Defendants also seek to have the SRO Decision upheld with respect to the findings regarding S.P.'s placement at VSS and the balancing of the equities.  However, Defendants seek reversal of the following findings by the SRO with respect to the procedural adequacy of the 2016-17 IEP: (1) that the District did not predetermine S.P.'s IEP for the 2016-2017 school year and that Defendants were offered meaningful participation at the CSE subcommittee meeting; (2) that the District considered sufficient evaluative material in crafting the 2016-17 IEP; (3) that the District developed appropriate goals for S.P. in the 2016-17 IEP; and (4) that the District recommended sufficient related services for S.P. in the 2016-17 IEP.  The Court will address the purported procedural deficiencies first.

A.    <u>Procedural Compliance</u>

"The initial procedural inquiry is no mere formality," <u>M.H.</u>, 685 F.3d at 245 (quoting <u>Walczak v. Florida Union Free Sch. Dist.</u>, 142 F.3d 119, 129 (2d Cir. 1998)), but rather, "acts as 'a safeguard against arbitrary or erroneous decisionmaking.'" <u>M.H.</u>, 685 F.3d at 245 (quoting <u>Evans v. Bd. of Educ.</u>, 930 F. Supp. 83, 93 (S.D.N.Y. 1996)) (additional citation omitted).  While not every procedural error will render an IEP legally inadequate, <u>see</u> <u>Grim</u>, 346 F.3d at 381-82, relief is warranted where the procedural deficiencies "(I) [i]mpeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of [a FAPE] to the parents' child; or (III) caused

a deprivation of educational benefits." M.H., 685 F.3d at 245 (quoting 20 U.S.C. §

1415(f)(3)(E)(ii)) (second and third alterations in original).

      1.   <u>Predetermination</u>

         Defendants first allege that the District committed a procedural violation

of the IDEA by "failing to consider S.P.'s parents' concerns and requests for S.P.'s program,

effectively shutting them out of the IEP development process." (Def. Mem. of Law 9-10.)

Specifically, Defendants aver that S.P.'s mother often voiced complaints to the District, and

provided documentation from S.P.'s doctor, who recommended a smaller self-contained special

education program and reading services, all of which were rebuffed by the District. (Id. at 10.)

According to Defendants, the CSE subcommittee "did not consider any other program options

for S.P. on the continuum of services;" nor did it consider "private evaluative information" at the

February 2016 CSE subcommittee meeting. (Id.)

         "Predetermination of a child's IEP amounts to a procedural violation of the [IDEA] if it

deprives the student's parents of meaningful participation in the IEP process." B.K., 12 F. Supp.

3d at 358 (citing cases). However, both the IHO and the SHO found in favor of the District here,

concluding that the evidence presented demonstrated that Defendants were given an opportunity

to participate and that the District did not predetermine S.P.'s placement. (SRO Decision 10-11;

IHO Decision 44-46.) In fact, the SRO Decision specifically addressed the arguments raised by

Defendants herein, finding that Defendants "raised concerns about the recommendation made by

the February 2016 CSE subcommittee and that the [D]istrict explained to [Defendants] why it

did not recommend that the student attend a special class placement." (SRO Decision 11.) A

similar finding was made in the IHO Decision. (IHO Decision 44 (noting that "the record

demonstrates that [Defendants] participated in the discussion [during the February 2016 CSE

subcommittee meeting] and provided input" and finding that "the fact that the CSE did not adopt [Defendants'] recommendations does not amount to a denial of meaningful participation").

Deference to the administrative decisions rendered "is particularly apt where the IHO and the SRO decisions are in agreement and are based on the same record as that before the district court," as is the case here.  B.K., 12 F. Supp. 3d at 360.  Having reviewed both the IHO and the SRO Decisions, as well as the transcripts of the hearing, this Court agrees with the SRO's conclusion that the hearing record does not support Defendants' predetermination claim.  Accordingly, this Court respectfully recommends that Defendants' motion to vacate the SRO Decision with respect the finding of predetermination be denied.

2.    Evaluative Material Considered by the District

Defendants' next argument is that the District "failed to review sufficient evaluative material at S.P.'s CSE meeting," in violation of the IDEA.  (Def. Mem. of Law 11.) According to Defendants, the lack of sufficient evaluative material resulted in the District's "fail[ure] to accurately identify S.P.'s areas of need."  (Id.)

The IDEA mandates that a CSE review "existing evaluation data on the child, including (i) evaluations and information provided by the parents of the child; (ii) current classroom-based, local, or State assessments, and classroom-based observations; and (iii) observations by teachers and related service providers."  20 U.S.C. § 1414(c)(1)(A).  Defendants argue that the hearing record establishes that the CSE limited its review to only one evaluation conducted on October 23, 2013.  (Def. Mem. of Law 11.)  However, both the IHO Decision and the SRO Decision found in favor of the District on this issue.

In ruling that the District relied on sufficient evaluative material in developing S.P.'s 2016-17 IEP, the SRO Decision found that the District considered the October 2013 evaluation,

as well as "a November 2013 speech and language reevaluation report, a December 2013 classroom observation, a January 2015 speech and language annual review progress report, a December 2015 Wechsler Individual Achievement Test-Third Edition (WIAT-III) clinician report, and a January 2016 speech and language annual review progress report." (SRO Decision 12.) The IHO made a similar finding. (IHO Decision 41-42.)

As with the predetermination argument, since both the IHO Decision and the SRO Decision are in agreement, this Court should pay particular deference to the conclusion in the SRO Decision that "the hearing record supports the IHO's finding that the evaluative information available to and considered by the February 2016 CSE subcommittee provided sufficient information regarding [S.P.'s] needs, abilities, and functional performance to develop her IEP." (SRO Decision 16.) Moreover, the Court's independent review finds no basis to disturb the SRO's finding. Accordingly, this Court respectfully recommends that Defendants' motion to vacate the SRO Decision on the grounds that the District failed to consider sufficient evaluative material in crafting S.P.'s 2016-17 IEP be denied.

### 3.   The Appropriateness of the Goals Set by the District

Next, Defendants argue that in creating the 2016-17 IEP, the District failed to develop appropriate goals for S.P. (Def. Mem. of Law 12.) Specifically, Defendants assert that the District "failed to include Goals targeting S.P.'s documented areas of deficit," instead developing goals that "aligned with sixth grade curriculum instead of S.P.'s individual needs." (Id.)

"An IEP must contain a statement of 'measurable annual goals, including academic and functional goals" designed to meet that child's individual needs." B.K., 12 F. Supp. 3d at 359 (quoting 20 U.S.C. § 1414(d)(1)(A)(i)(II)). "New York regulations further require that such

goals include 'evaluative criteria, evaluation procedures, and schedules to be used to measure progress toward meeting the annual goal.'" B.K., 12 F. Supp. 3d at 359-60 (quoting N.Y. Comp. Codes R. & Regs. Tit. 8, § 200(d)(2)(iii)(b)) (additional citation omitted).

In affirming the IHO Decision with respect to this argument, the SRO found that the 2016-17 IEP "included 10 annual goals which targeted [S.P.'s] needs in the areas of reading, writing, math, speaking, listening, and language skills." (SRO Decision 17.) The SRO also found that "each annual goal identified the specific skill [S.P] was to achieve, the criteria by which [S.P.'s] success toward achieving the goal was to be measured . . ., the procedures that would be utilized to evaluate [S.P.'s] success . . ., and how frequently [S.P.'s] progress toward meeting the goal would be measured . . . . (Id.) Based on these findings, the SRO held that "[t]he evidence in the hearing record leads to the overall conclusion that the annual goals in the [2016-17] IEP aligned with and targeted [S.P.'s] needs identified in the present levels of performance, appropriately addressed [S.P.'s] needs, and were sufficiently specific and measurable to guide instruction and to evaluate [S.P.'s] progress over the course of the school year." (SRO Decision 18.)

Courts are generally "reluctant to find a denial of a FAPE based on failures in IEPs to identify goals or methods of measuring progress." B.K., 12 F. Supp. 3d at 360 (quotation and citations omitted). As stated by the Second Circuit, "[t]he sufficiency of goals and strategies in an IEP is precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers." Grim, 346 F.3d at 382. Moreover, as with Defendants' first two arguments considered by the Court, deference is again "particularly apt" where both the IHO and the SRO are in agreement on an issue, as is the case here. B.K., 12 F. Supp. 3d at 360.

Accordingly, based on the record presented, this Court finds no reason to disturb the finding of the SRO that the goals contained in S.P.'s 2016-17 IEP were appropriate. Therefore, this Court respectfully recommends that Defendants' motion to vacate the SRO Decision on the ground that the District failed to develop appropriate annual goals for S.P. be denied.

           4.    <u>Related Services</u>

Defendants' final argument is that by recommending only two thirty-minute sessions of speech therapy per week in a group of five students, the District failed to recommend sufficient related services for S.P. in the 2016-17 IEP. (Def. Mem. of Law 13.) Specifically, Defendants argue that notwithstanding the fact that the District classified S.P. as having a Speech or Language Impairment and identified her speech delays as a "chief concern," the 2016-17 IEP recommended reducing S.P.'s speech therapy from three weekly sessions to two and failed to offer any individualized speech therapy. (<u>Id.</u>) In addition, Defendants argue that the District failed to recommend counseling services for S.P., even though she presented with social and emotional issues, and failed to recommend parent training and counseling for Defendants. (<u>Id.</u> 14.)

In determining the issue of sufficient related services, the SRO agreed with the IHO that the reduction of speech therapy, as well as the decision not to recommend counseling services for either S.P. or her parents did not deny S.P. a FAPE. (SRO Decision 18-24; IHO Decision 43, 47.) With respect to the reduction in speech therapy recommended by the District, the SRO specifically examined S.P.'s language needs, as well as the progress she made during the 2015-2016 school year, as testified to by the speech-language pathologist. (SRO Decision 19-20.) After considering all of the evidence, the SRO found that "the February 2016 CSE subcommittee's recommendation of two 30-minute sessions per week of speech-language

therapy did not result in a denial of a FAPE to [S.P.]." (Id. 20.)  This Court agrees with the SRO and finds no basis to vacate that decision.

As to counseling services for S.P., despite Defendants' claim that S.P. was withdrawn, frustrated and isolated, both the school psychologist and the speech-language pathologist testified that there was no indication that S.P. had any behavioral or socialization issues; nor were any concerns raised at the February 2016 CSE subcommittee meeting about S.P.'s behavior. (SRO Decision 21.)  Moreover, S.P.'s prior IEPs indicated that S.P. "displayed appropriate interactions with peers as well as adults and was kind and respectful," and that S.P. "appeared to have no social or emotional needs that should be addressed through special education." (Id. 22.)  Finally, "none of the developmental pediatrician's letters indicated that [S.P.] exhibited social/emotional needs that required counseling services." (Id.)  In light of the foregoing evidence, the SRO affirmed the IHO's determination that counseling services were not warranted for S.P. for the 2016-2017 school year. (Id.)  Having considered the evidence as well, this Court agrees with the SRO, particularly in light of the fact that both the IHO and the SRO agree on this issue, which, as set forth above, requires a greater degree of deference on the Court's part. See, e.g., M.T. v. New York City Dep't of Educ., No. 1:14-cv-10124, 2016 WL 1267794, at *5 (S.D.N.Y. Mar. 29. 2016) (stating that "district courts give more deference to administrative proceedings when the IHO and SRO are in agreement"); A.A. v. New York City Dep't of Educ., No. 14 Civ. 8483, 2015 WL 10793404, at *10 (S.D.N.Y. Aug. 24, 2015) ("Deference is especially appropriate . . . where the SRO Decision agreed with the ruling of the IHO.").

Finally, with respect to the District's decision not to recommend counseling and training services for Defendants, New York regulations only require such counseling where a child is

autistic, see R.E. v. New York City Dep't of Educ., 694 F.3d 167, 191 (2d Cir. 2012) (citing N.Y. Comp. Codes R. & Regs. tit. 8 § 200.13(d)), which, while it appears S.P. was diagnosed with by her private physician, she was not classified with the disorder by the District.  Such counseling is intended to "assist[] parents in understanding the special needs of their child; provid[e] parents with information about child development; and help[] parents to acquire the necessary skills that will allow them to support the implementation of their child's [IEP]."  R.E., 694 F.3d at 191 (quoting N.Y. Comp. Codes R. & Regs. tit. 8 § 200.1(kk)).  Even where a school district violates New York's regulations with respect to this provision, however, the Second Circuit has found that the failure to provide such services, standing alone, does not constitute a denial of a FAPE.  See R.E., 694 F.3d at 191 ("Though the failure to include parent counseling in the IEP may, in some cases (particularly when aggregated with other violations), result in a denial of a FAPE, in the ordinary case that failure, standing alone, is not sufficient to warrant reimbursement.").

In ruling in the District's favor on this issue, the SRO found that, based on the hearing record, "it does not appear that the parents needed counseling and training to assist them in understanding the special needs of their child or [S.P.'s] development," as is intended for in the New York regulations.  (SRO Decision 23.)  "[R]ather, the only issue raised [by Defendants] relates to a language barrier between the parent and the curriculum that is otherwise unrelated to [S.P.'s] needs or development, or the implementation of [S.P.'s] IEP."  (Id.)  Accordingly, the SRO concluded that there was no evidence to warrant a finding that "a failure to recommend parent counseling and training constituted a procedural violation or resulted in a failure to offer [S.P.] a FAPE for the 2016-17 school year."  (Id. 24.)  This Court agrees with the SRO.

Based on the foregoing, this Court respectfully recommends that Defendants' motion to vacate the SRO Decision with respect to its finding that the District offered sufficient related services to S.P. for the 2016-2017 school year be denied.

B.      Substantive Adequacy

Having determined that the February 2016-17 IEP was procedurally adequate, the Court next turns to the substantive adequacy of the IEP and considers "whether it was 'reasonably calculated to enable the child to receive educational benefit[s].'" B.K., 12 F. Supp. 3d at 368 (quoting R.E., 634 F.3d at 190) (alteration in original). Substantive adequacy is established "when the IEP 'is likely to produce progress, not regression' and 'affords the student . . . an opportunity greater than mere trivial advancement.'" B.K., 12 F. Supp. 3d at 368 (quoting E.S. ex rel B.S. v. Katona-Lewisboro Sch. Dist., 487 Fed. Appx. 619, 621 (2d Cir. 2012)) (additional citation and quotation marks omitted). "Substantive inadequacy automatically entitles the parents to reimbursement" of tuition under the IDEA. R.E., 694 F.3d at 190.

In the within action, the SRO Decision found S.P.'s 2016-17 IEP to be substantively inadequate because it failed to include specialized reading instruction, referred to as Academic Intervention Services ("AIS"), and the CSE subcommittee failed to specify that S.P. would receive such services in reading during the 2016-2017 school year, as she had in previous years. (SRO Decision 28-29.) In so holding, the SRO reversed the IHO Decision with respect to this finding. (Id. 29.) In moving for summary judgment herein, the District argues that the SRO erred in finding S.P.'s 2016-17 IEP substantively inadequate and urges the Court to vacate the SRO's finding and reinstate the IHO Decision on this point. Defendants cross-move to have the SRO Decision affirmed with respect to substantive inadequacy.

"[A]s decisions on substantive adequacy implicate educational policy judgments, administrative determinations on these matters are entitled to a greater degree of deference by the court." B.K., 12 F. Supp. 3d at 368 (citation omitted); see also M.H., 685 F.3d at 244 ("[D]eterminations regarding the substantive adequacy of an IEP should be afforded more weight than determinations concerning whether an IEP was developed according to the proper procedures."). Here, the SRO conducted a thorough review of the hearing record, finding that despite S.P.'s "significant weaknesses in reading and memory," as testified to by her classroom teacher, the February 2016-17 IEP recommended only general education instruction and daily resource room services to address S.P.'s reading needs and "did not indicate that resource room services would be dedicated to reading instruction." (SRO Decision 27.) As a result, the SRO found S.P.'s 2016-17 IEP substantively inadequate. Having reviewed the hearing record and the evidence on a whole, this Court agrees with the SRO.

The District argues that testimony offered at the due process hearing indicates that S.P. would have received AIS services in reading, as she had in previous years, even though such services are not explicitly set forth in the 2016-17 IEP. (Pl. Mem. of Law 15.) However, the Second Circuit has rejected the use of such "retrospective testimony" that "certain services not listed in the IEP would actually have been provided to the child if he or she had attended the school district's proposed placement." R.E., 694 F.3d at 185. Rather, the Second Circuit has mandated that "the IEP should be evaluated prospectively as of the time of its drafting" and "that retrospective testimony that the school district would have provided additional services beyond those listed in the IEP may not be considered." Id. at 186.

The District also argues that the SRO erred because New York State regulations do not require AIS services to be listed on an IEP. (Pl. Mem. of Law 16.) However, as the SRO Decision explained,

> subsequent guidance by the United States Education Department indicates that services that fall into the realm of special education are required to be listed on an IEP, stating that "[t]he IEP team is responsible for determining what special education and related services are needed to address the unique needs of the individual child with a disability. The fact that some of those services may also be considered 'best teaching practices' or 'part of the district's regular education program' does not preclude those services from meeting the definition of 'special education' or 'related services' and being included in the child's IEP."

(SRO Decision 27-28 (quoting Letter to Chambers, 59 IDELR 170 [OSEP 2012]) (alteration in original)). As the SRO found, the District's provision of AIS in reading to S.P. during prior years qualifies as "specially designed instruction," which is defined in part, "as adapting the content, methodology, or delivery of instruction to address the unique needs of a student with a disability that result from the student's disability." (SRO Decision 28 (citing 34 C.F.R. 300.39[b][3].) The SRO based this finding on the hearing testimony of the District's AIS teacher, who stated that she modified the content and delivery of AIS reading instruction to S.P. to address S.P.'s unique needs in reading. (SRO Decision 28.) As such, AIS in reading for S.P. "constituted specially designed instruction and was required to be included" in S.P.'s 2016-17 IEP. (Id.)

Based on the foregoing, this Court agrees with the SRO Decision with respect to its finding that S.P.'s 2016-17 IEP was substantively inadequate, which resulted in the denial of a FAPE to S.P. by failing to address her reading needs for the 2016-2017 school year. Accordingly, this Court respectfully recommends that the District's motion to vacate the SRO Decision with respect to this finding be denied and that Defendants' motion to affirm the SRO Decision on this ground be granted.

C.    Appropriateness of Alternative Placement

After determining that the District failed to offer S.P. a FAPE for the 2016-2017 school year, the SRO next determined that VSS – where Defendants unilaterally placed S.P. for the 2016-2017 school year – was appropriate because it provided S.P. with "specially designed instruction that met her special education needs."  (SRO Decision 35.)  To this end, the SRO affirmed the IHO's finding that S.P. "exhibited progress academically, socially/emotionally, and in relation to her language skills during the 2016-17 school year."  (Id.)

The District maintains that even if it did not provide S.P. with a FAPE and reimbursement of tuition is warranted, "the record contains ample evidence that [VSS] is not an appropriate placement for S.P." and, therefore, the SRO Decision with respect to this finding should be vacated.  (Pl. Mem. of Law 19.)  Conversely, Defendants argue that the SRO was correct in concluding that VSS is an appropriate placement for S.P. and seek to have the finding affirmed.  (Def. Mem. of Law 23.)

"Where a school district denies a disabled child a FAPE, the parents may place the child in an appropriate private school and then seek tuition reimbursement from the school district." C.L. v. Scarsdale Union Free Sch. Dist., 744 F.3d 826, 836 (2d Cir. 2014) (citing Burlington, 471 U.S. at 370 and Carter, 510 U.S. at 12-13).  The parents bear the burden of demonstrating the appropriateness of the private placement.  See C.L., 744 F.3d at 836 ("The parents bear the burden of showing that the private placement they selected was appropriate for the child . . . ."); M.H., 685 F.3d at 246 ("In making a claim for reimbursement, the burden shifts to the parents to demonstrate that the school in which they have chosen to enroll their child is appropriate.").

"The parents' placement of the child must be 'reasonably calculated to enable the child to receive educational benefits,'" C.L., 744 F.3d at 836 (quoting Rowley, 458 U.S. at 207)

(additional citation and quotation marks omitted).  "Progress may be demonstrated by grades, test scores, regular advancement, or other objective evidence, but no single factor is dispositive as 'courts assessing the propriety of a unilateral placement [must] consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs.'"  C.L., 744 F.3d at 836 (quoting Frank G. v. Board of Educ. of Hyde Park, 459 F.3d 356, 364 (2d Cir. 2006)) (alteration in original).  However, "even where there is evidence of success [in the private placement]," courts should not award reimbursement where "the chief benefits of the chosen school are the kind of . . . advantages . . . that might be preferred by parents of any child, disabled or not."  M.H., 685 F.3d at 246 (quoting Gagliardo, 489 F.3d at 115).  Rather, a unilateral private placement is "only appropriate if it provides education[al] instruction specifically designed to meet the unique needs" of the child.  M.H., 685 F.3d at 246 (quoting Gagliardo, 489 F.3d at 115) (emphasis omitted).

As the SRO Decision details in great length, VSS is a small private school, consisting of only forty-six students, that provides instruction to disabled students in grades one through twelve.  (SRO Decision 31.)  Class sizes do not exceed eight students and VSS has occupational therapists, speech-language pathologists, and counselors on staff.  (Id.)  While enrolled at VSS during the 2016-2017 school year, S.P. received instruction in the "core areas" of math, English language arts (ELA), science, and social studies in a class ratio of four students to one teacher, who was certified in both special and general education.  (Id.)  She received one individual and two group speech therapy sessions per week, one counseling session per week, one social skills class per week, and one individual and two group reading sessions per week with a certified reading teacher.  (Id. 32.)  To further address her reading needs, S.P.'s classroom teacher provided daily forty-minute sessions of reading instruction in a group of two students using a

program designed for students who have dyslexia or are struggling to read.  (Id.)  Specific

programs were also used to address S.P.'s written language and math needs.  (Id. 32-33.)

Using the program set forth above, S.P. made progress while attending VSS during the

2016-2017 school year.  (Id. 34.)  Her special education teacher testified that S.P.'s academic

progress was "fantastic," and that her self-confidence increased.  (Id.)  Her report card

demonstrates an improvement in reading, language arts, and math and her reading teacher

testified that S.P. "had progressed 'half a year' in oral fluency."  (Id. 34-35.)  Moreover, the head

of VSS testified that S.P. had "flourished" during her time at VSS, going "'from a quiet little

girl' to one who advocated for herself, asked for what she wanted, and was comfortable with her

group of friends."  (Id. 35.)

In light of the foregoing, which, along with the hearing record, demonstrates that VSS

provided S.P. with specially designed instruction that met her special education needs, this Court

agrees with the SRO that VSS is an appropriate placement for S.P. and finds no basis for

vacating that finding.  As the Second Circuit has held, "the test for the parents' private placement

is that it is appropriate, . . . not that it is perfect."  C.L., 744 F.3d at 837 (citation omitted).  The

evidence before the Court certainly leads to the conclusion that S.P.'s placement at VSS is

"appropriate."  Accordingly, this Court respectfully recommends that the District's motion to

vacate the SRO Decision with respect to the finding of appropriateness be denied and that

Defendants' motion to affirm the SRO's finding that VSS is an appropriate placement for S.P. be

granted.

    D.    <u>The Equities</u>

The final step the Court must take in considering a tuition reimbursement claim is

to "evaluate the equities."  M.H., 685 F.3d at 254 (citing Carter, 510 U.S. at 12).  "Important to

the equitable consideration is whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA." C.L., 744 F.3d at 840 (citation omitted). As with the appropriateness of the unilateral placement analysis, the parents bear the burden of demonstrating that the equities weigh in their favor. See id. at 836 (citing R.E., 694 F.3d at 184-85).

As both the IHO and the SRO found, Defendants herein cooperated with the District and did "not impede or otherwise obstruct the CSE's ability to develop an appropriate special education program for [S.P.], made [S.P.] available for evaluations, and did not fail to raise the appropriateness of an IEP in a timely manner or act unreasonably." (SRO Decision 37; IHO Decision 51.) The District seeks to have the SRO Decision vacated with respect to this finding, arguing that Defendants "had already predetermined S.P.'s 2016-2017 placement at [VSS] by March of 2016, and certainly by May of 2016, when they signed a contract with [VSS] . . . ." (Pl. Mem. of Law 23.) However, as the record demonstrates, and both the IHO and the SRO correctly found, Defendants' "May 2016 contract with [VSS] was not a predetermination of placement as [Defendants] toured the proposed public school placement for the student's 2016-2017 school year." (IHO Decision 51.) Moreover, Defendants timely submitted a 10-day notice letter to the District on August 17, 2016, prior to removing S.P. from the District to attend VSS. (SRO Decision 37.) After receiving Defendants' August 17, 2016 letter, "there is no indication in the hearing record that the [D]istrict offered to reconvene the CSE . . . to determine if it could address [Defendants'] concerns relating to the February 2016[-17] IEP." (Id.) Accordingly, this Court agrees with both the IHO and the SRO that equitable considerations weigh in favor of an award of tuition reimbursement to Defendants for the 2016-17 school year and respectfully

recommends that Plaintiff's motion to vacate that finding be denied and Defendants' motion to affirm the finding be granted.

CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the Decision of the State Review Officer dated November 29, 2017 be affirmed in its entirety, that Plaintiff's motion for summary judgment, appearing at Docket Entry [35], be denied in its entirety, and that Defendants' motion for summary judgment, appearing at Docket Entry [43], be granted in part and denied in part, as set forth herein.

**SO ORDERED:**

Dated: Central Islip, New York
        August 23, 2019                                    /s/        Anne. Y. Shields
                                                           ANNE Y. SHIELDS
                                                           United States Magistrate Judge